IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CAROL MORTON,                          §
                                       §
                    Plaintiff,         §
                                       §
VS.                                    §  Civil Action No. 3:10-CV-1076-D
                                       §
MICHAEL J. ASTRUE,                     §
COMMISSIONER OF SOCIAL                 §
SECURITY,                              §
                                       §
                    Defendant.         §

MEMORANDUM OPINION

Plaintiff Carol Morton ("Morton") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under titles II and XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

Morton filed applications for DIB and SSI benefits, alleging that she had been disabled since October 1, 2007 due to major depressive disorder, bipolar disorder, and personality disorder. She was 46 years old and had earned a high school diploma at the time of her alleged disability onset. She had past relevant work experience as a general clerk, home health attendant, and data entry clerk. Her benefits applications were denied initially and

upon reconsideration.

Morton requested a hearing with an administrative law judge ("ALJ"). Following a hearing, the ALJ determined that Morton was not disabled during the adjudicative period of October 1, 2007 through May 29, 2009 and was not eligible for DIB or SSI payments. The ALJ's decision followed the five-step sequential process. At step one, the ALJ found that Morton has not engaged in substantial gainful activity since her alleged onset date of October 1, 2007. At step two, she determined that Morton's severe impairments are major depressive disorder and bipolar disorder. The ALJ determined at step three that Morton does not have an impairment or combination of impairments that meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. She concluded at step four that Morton is unable to perform any past relevant work. At step five, the ALJ found that Morton has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that her work must be limited to simple tasks and her interaction with the public and with coworkers should only be incidental to her duties. The ALJ determined that, based on these limitations, Morton can perform other jobs——laundry worker, housekeeper, and industrial sweeper——that exist in significant numbers in the national economy. She therefore found that Morton is not disabled.

Morton sought review by the Appeals Council, which denied her

request, and the ALJ's decision became the final decision of the Commissioner. Morton now seeks judicial review on the following grounds: (1) the ALJ's finding that Morton can perform other work is not based on substantial evidence; (2) the ALJ and the Appeals Council failed to weigh every medical opinion in the record; and (3) the ALJ failed to make a proper credibility finding.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted). "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To determine

whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173–74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563–64 n. 2; *Martinez*, 64 F.3d at 173–74; 20 C.F.R. § 404.1520 (2010). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is

substantial evidence of disability: (1) objective medical facts;
(2) diagnoses and opinions of treating and examining physicians;
(3) the claimant's subjective evidence of pain and disability; and
(4) age, education, and work history. *Martinez*, 64 F.3d at 174
(citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per
curiam)). "The ALJ has a duty to develop the facts fully and
fairly relating to an applicant's claim for disability benefits."
*Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty,
[the] decision is not substantially justified." *Id.* Reversal of
the ALJ's decision is appropriate, however, "only if the applicant
shows that he was prejudiced." *Id.* The court will not overturn a
procedurally imperfect administrative ruling unless the substantive
rights of a party have been prejudiced. *See Smith v. Chater*, 962
F.Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

### III

The court first considers Morton's contention that the ALJ's
finding that Morton can perform work existing in significant
numbers in the national economy is not supported by substantial
evidence.

### A

Morton posits that the ALJ's finding, based on the testimony
of a vocational expert ("VE"), that she can work as a laundry

worker,[1] housekeeper, and industrial sweeper[2] is not supported by substantial evidence because the requirements of these jobs, as listed in the *Dictionary of Occupational Titles* ("DOT"), require more than incidental interaction with the public and coworkers and therefore cannot be performed with her limitations. She cites parts of the definitions from the DOT that indicate that each job involves more than incidental interaction. In support, Morton relies on a dictionary definition of the term "incidental." She posits that when the DOT job descriptions and dictionary definition of "incidental" are considered in tandem, the ALJ's finding that she can perform these positions is not supported by substantial evidence.

The Commissioner responds that the ALJ properly relied on the VE's testimony that working as a laundry worker, housekeeper, or industrial sweeper is consistent with Morton's RFC. The Commissioner posits that the ALJ properly credited the VE's testimony because the VE is familiar with the specific requirements of jobs corresponding to Morton's RFC; the DOT gives a general description of a job, but a VE is familiar with the specific requirements of a particular occupation, including the working

---

[1]The ALJ's error in citing "361.667-018" instead of "361.687-018" as the code for "laundry worker" does not require reversal because it is obviously a typographical error.

[2]The *Dictionary of Occupational Titles* title is "sweeper, industrial, sweeper cleaner, industrial."

conditions and required attributes and skills; the VE's testimony
identified jobs that are consistent with the descriptions found in
the DOT; and the DOT descriptions indicate that these jobs do not
require significant contact with other people, but involve
significant contact with things.

B

In determining at step five whether a claimant can perform
alternative available work, the ALJ can consult a VE in addition to
or instead of the DOT.  The Social Security Regulations permit ALJs
to rely either on the DOT or on VE testimony when making a
determination at step five.  *See* 20 C.F.R. § 404.1566(d)-(e)
(2010).  VEs assist the ALJ in determining whether a claimant's
work skills can be used to perform other jobs.  *See* 20 C.F.R.
§§ 404.1566(e), 416.966(e).  In some cases, courts require that the
Commissioner obtain VE testimony or other similar evidence.  *See*
*Lawler v. Heckler,* 761 F.2d 195, 198 (5th Cir. 1985) (holding that
instead of taking administrative notice of available jobs despite
claimant's limitations, ALJ should have required VE testimony
concerning available jobs).

Of course, "[o]ccupational evidence provided by a VE or
[Vocational Specialist] generally should be consistent with the
occupational information supplied in the DOT."  Social Security
Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  When
there is an apparent unresolved conflict between VE testimony and

the DOT, the ALJ must inquire on the record whether the two sources are consistent, and must elicit a reasonable explanation of the conflict before relying on VE testimony to support a disability determination. *Id.* If there is a conflict, VE evidence is not automatically credited over information contained in the DOT. *See id.* Instead, the ALJ must resolve the conflict by determining whether the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than the DOT. *Id.* An ALJ may give greater weight to VE testimony than to descriptions from the DOT when the record reflects an adequate basis for doing so. *See Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000).

A direct conflict between the two may arise when the VE's testimony concerning the exertional or skill level of a job is facially different from the description of the job found in the DOT. *Id.* at 145. When a "direct and obvious conflict" exists between the VE's testimony and the DOT and the ALJ fails to explain or resolve the conflict, the VE's testimony is so lessened that reversal and remand for lack of substantial evidence usually follows. *Id.* at 146. Implied conflicts can arise in a host of circumstances when a VE testifies about an individual claimant's activities. *See id.* at 146-47. When a conflict is tangential, implied, or indirect, and not subject to adversarial development at the administrative hearing, the ALJ can accept and rely upon the VE's testimony without resolving a later-proffered conflict,

provided the record reflects an adequate basis for doing so. *See id.* at 146; *see also Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F.Supp.2d 607, 613 (E.D. Tex. 2009) (affirming Commissioner's decision to rely on VE testimony despite implied conflict where adequate evidence supported VE testimony). Claimants cannot, however, "scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey,* 230 F.3d at 146-64. And DOT job descriptions "should not be given a role that is exclusive of more specific [VE] testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145.

C

The court holds that, assuming *arguendo* that there is some conflict between the job descriptions found in the DOT and the VE's testimony, it is not apparent. The ALJ was therefore entitled to rely on the VE's testimony, provided the record reflects an adequate basis for doing so. The administrative record contains such a basis in the form of expert testimony by a VE that assumed limitations on Morton's interaction with the public and coworkers.

The VE's testimony supports the ALJ's finding that Morton can perform work that exists in significant numbers in the national

economy. The hypothetical that the ALJ posed to the VE limited Morton's interaction with the public and coworkers to only incidental contact. The VE testified that a claimant with Morton's limitations can work in positions as a laundry worker, cleaner or housekeeper, and industrial sweeper. When questioned by the ALJ, the VE opined that these job descriptions and their fit within Morton's limitations are consistent with the DOT. Morton's attorney asked the VE whether further limiting Morton's RFC to exclude all interaction with the public or coworkers would affect the available occupational base. The VE responded that it would not, that the ALJ's hypothetical already accounted for this additional limitation, and that, had it not, Morton's occupational base would remain essentially the same because some of the proffered jobs require "incidental or no contact." R. 41. Morton's attorney did not object to any apparent conflict between the DOT and the VE's testimony that jobs in Morton's occupational base would require only incidental interaction with others.

The court rejects Morton's contention that the ALJ's finding is not supported by substantial evidence when compared to the DOT job descriptions and dictionary definition of "incidental." The DOT description of an industrial sweeper includes "driv[ing] industrial vacuum cleaner through designated areas, such as factory aisles and warehouses"; the tasks of a cleaner-housekeeper include "clean[ing] rooms and halls in commercial establishments." DOT

(4th Ed. 1991) § 389.683-010], 1991 WL 673279; § 323.687-014, 1991 WL 672783. In both situations, any interaction required of Morton with coworkers or the public would only be incidental to her primary task of cleaning, which would not require interaction with coworkers or the public. And the DOT description of a laundry laborer's duties includes numerous other tasks that do not require interaction with others, including opening, sorting, weighing, and stacking laundry. *Id.* at § 361.687-018, 1991 WL 672992.

In sum, because any conflict between the VE's testimony and the DOT description of these jobs must be implied, and because at Morton's hearing her attorney did not object based on a conflict between the VE's opinion and the DOT description, the ALJ was entitled to accept and rely upon the VE's testimony regarding the available occupational base. Accordingly, the court holds that the ALJ properly relied on the VE's testimony, and her finding that Morton can perform work existing in significant numbers in the national economy is not supported by substantial evidence.

IV

Morton argues second that the ALJ and the Appeals Council failed to weigh every medical opinion in the record.

A

Morton makes essentially two arguments challenging the ALJ's formulation of her RFC. Both relate to the opinion of her treating psychiatrist, Sioe S. Tan, M.D. ("Dr. Tan"), who on several

occasions assigned her a Global Assessment of Functioning ("GAF") score of 48.

First, she contends that the ALJ did not assign proper weight to Dr. Tan's opinion. She posits that her GAF score of 48 is common in individuals suffering serious impairment in social, occupational, or school functioning, including an inability to keep a job. Morton contends that, although the ALJ acknowledged that Morton had received a GAF score of 48, the ALJ erred in failing to state expressly what weight she assigned to Dr. Tan's opinion. Morton argues that because the GAF score from her primary source of mental health treatment indicated serious symptoms, the ALJ failed in her determination of Morton's RFC to reflect the proper nonexertional limitations, rendering the RFC ruling faulty, legally erroneous, and not supported by substantial evidence.

Second, Morton maintains that the Appeals Council erred in declining to consider specifically Dr. Tan's mental health assessment of Morton completed on July 16, 2009, in which he rendered opinions about Morton's marked limitations that were consistent with a GAF score of 48, and reflected her inability, from a mental standpoint, to perform competitive, remunerative unskilled work on a regular and continuing basis, thereby severely limiting the potential occupational base and justifying a finding that she is disabled. She contends the Appeals Council erred as a matter of law when it failed to weigh Dr. Tan's opinions and her

GAF scores.

The Commissioner responds that the ALJ properly determined Morton's RFC after reviewing the medical evidence, including Dr. Tan's records, evidence from consulting examiner Lawrence Muirhead, Ph.D. ("Dr. Muirhead"), a clinical psychologist who performed a consultative evaluation of Morton on July 11, 2008 and assigned her a GAF score of 60, and assessing the credibility of Morton's subjective complaints. The Commissioner posits that the ALJ had ample basis in the record to accord more weight to Dr. Muirhead's evaluation and his inclusion in the RFC assessment that Morton must perform simple tasks, and interaction with the public and coworkers must be no more than incidental to her duties. The Commissioner also asserts that the ALJ noted that Morton's attendance at support groups shows that she had moderate limitations in social functioning.

With respect to the Appeals Council, the Commissioner argues that the Appeals Council indicated that it had considered Dr. Tan's records but concluded that they did not present new and material evidence that required review. The Commissioner maintains that the Appeals Council was not required to address the new evidence or analyze it in detail.

The court concludes that the ALJ did not commit reversible error in determining Morton's RFC.

The ALJ determined that Morton's RFC would permit her to do a full range of work at all exertional levels, but that her work must be limited to simple tasks and her interaction with the public and coworkers must be no more than incidental to her duties. In reaching this conclusion, the ALJ recognized that Dr. Tan assessed a GAF score of 48, but she chose to rely on other evidence that supported the finding that Morton's RFC is not as limited as that score suggests.

The ALJ found that Morton experienced substantial improvement in mood after being treated with medications. R. 16. She noted that, in a July 11, 2008 consultative examination, Dr. Muirhead noted that Morton had experienced a substantial improvement in mood due to her medication regime. *Id.* The ALJ also relied on Dr. Muirhead's assessment on July 11, 2008 that Morton's GAF was 60, reflecting milder symptoms. R. 17. The ALJ found that Morton was able in 2008 to smile appropriately and to laugh on several occasions, that her thought processes reflected adequate conceptual development with no evidence of psychotic process or impairment of reality testing on mental status evaluation after only six months of treatment. *Id.* The ALJ concluded that Morton's presentation on

- 15 -

mental status evaluation, considered in combination with Dr. Muirhead's findings, convinced her that Morton at most experienced a brief period of exacerbated symptomatology, and that her symptoms had improved with medication. *Id.* The ALJ found that Morton had received various forms of treatment, which would normally weigh in her favor, but that the treatment had been generally successful in controlling her symptoms. *Id.* And on December 4, 2008, Morton reported to Metrocare that her medication worked well and she denied any side effects. *Id.* Although an April 27, 2009 mental status evaluation reflected increased symptomatology, the ALJ found that the medical evidence showed significant gaps in Morton's history of treatment, citing the passage of time between treatment received at Metrocare in June 2008 and the resumption of treatment in March 2009. *Id.* And at that time, Morton reported that her depression had improved and that she was hearing voices less frequently. *Id.* The ALJ relied on such facts, and the fact that Morton reported consistently that her depression had improved with medications, to find that, with treatment, Morton would not experience the degree of functional limitations she proposed. *Id.*

The ALJ also relied on evidence that Morton can use public transportation and that she used such transportation to reach Dr. Muirhead's office in July 2008. *Id.* Morton also reported that she gets around town by bus and that, although she spends the day in bed, she goes to support groups and spends time with others at

MHMR. *Id.* The ALJ found that this evidence supports the finding that Morton, at most, has moderate limitations in social functioning. *Id.*

The ALJ also cited evidence that in 2008 Morton lived alone and was independent in her dress and hygiene, routinely performed household chores, was competent to manage funds and has adequate literary skills, and that Morton provided no specific information in the consultative examination, despite repeated inquiry, about her activities of daily life, other than to state that she looks for jobs online and talks to her mother. *Id.* at 17-18.

In sum, the ALJ did weigh the medical opinions in the record, but she reached a conclusion that is adverse to Morton.

C

Nor does the action of the Appeals Council present grounds for reversal, despite the fact that Morton submitted additional evidence from Dr. Tan after the ALJ issued her decision.

"It is not appropriate to automatically reverse merely because the Appeals Council failed to explain the weight it afforded evidence first presented to it." *Henderson v. Astrue,* 2011 WL 540286, at *4 (N.D. Tex. Feb. 15, 2011) (Fitzwater, C.J.) (quoting *Metcalf ex rel. ANM v. U.S. Comm'r Soc. Sec. Admin.*, 2009 WL 5174368, at *5 (W.D. La. Dec. 18, 2009)). "[I]n the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the

Appeals Council failed to address the evidence in its decision."
*McGee v. Astrue*, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009)
(citing *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005), and
*Higginbotham v. Barnhart*, 163 Fed. Appx. 279 (5th Cir. 2006) (per
curiam) ("*Higginbotham II*")).  Rather, the district court should
"review the record as a whole, including the new evidence, in order
to determine whether the Commissioner's findings are still
supported by substantial evidence."  *Higginbotham II*, 163 Fed.
Appx. at 281 (addressing review by court of appeals).  *Id.*
Accordingly, the court holds that the Appeals Council did not
commit legal error when it failed to specifically address Morton's
new evidence.

Nor did the Appeals Council commit legal error by failing to
remand the case to the ALJ in light of the new evidence.  Under the
regulations, the Appeals Council is not required to remand a
decision to the ALJ when a claimant presents new evidence.  It may
"deny or dismiss the request for review, or it may grant the
request and either issue a decision or remand the case to an
[ALJ]."  20 C.F.R. § 404.967 (2011).  If the Appeals Council grants
the claimant's request for review, it may "affirm, modify or
reverse the [ALJ's decision]" or "remand the case to an [ALJ]."  20
C.F.R. § 404.979 (2011).  When a claimant seeks review based on new
evidence, the Appeals Council should review the case if it finds
that the ALJ's action, findings, or conclusion is contrary to the

weight of the evidence, which includes any new and material evidence relating to the period on or before the date of the hearing before the ALJ. *See* 20 C.F.R. § 404.970 (2011). In this case, the Appeals Council denied review and found that the new evidence did not provide a basis for changing the ALJ's decision. R. 1-2.

The proper inquiry concerning new evidence takes place in the district court, which considers whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence. *Higginbotham II*, 163 Fed. Appx. at 282; *Henderson*, 2011 WL 540286, at *4-5. After the ALJ issued her decision, but before the Appeals Council considered Morton's request for review, Dr. Tan submitted a report from a July 16, 2009 assessment of Morton's ability to do work-related activities, as well as other medical records dating from May 21, 2009 to August 13, 2009. This new evidence does not show that the ALJ's decision is unsupported by substantial evidence. For example, the new evidence submitted to the Appeals Council includes a record of Morton's May 21, 2009 visit to Dr. Tan, showing she stated that her medications worked well, but that she needed refills. This statement supports the ALJ's determination that Morton's hearing testimony about her symptoms was not credible because the record indicated that her medication effectively managed her symptoms. Nor does Dr. Tan's July 16, 2009 assessment of Morton's ability to do

work-related activities show that the ALJ's decision is unsupported by substantial evidence. Dr. Tan's evaluation includes his opinions that Morton's GAF score was 48, that she had no useful ability to interact with coworkers or accept and appropriately respond to instructions in a workplace setting, and that these limitations would cause her to be absent from work at least four days per month. But the ALJ considered Dr. Tan's opinion that Morton's GAF score was 48, as well as Dr. Muirhead's opinion that Morton's GAF score was 60, before determining that Morton was not disabled. R. 17. The ALJ's decision also relied on substantial additional evidence concerning Morton's symptoms and functional capacity. For example, the ALJ's decision was based on evidence that Morton uses public transportation, manages funds, and attends support group meetings, and that she experienced substantial improvement in her symptoms with treatment. R. 16-17. The court concludes that substantial evidence supports the ALJ's decision. Therefore, no reversible error has been shown.

V

Morton contends third that the ALJ failed to make a proper credibility finding.

A

Morton maintains that the ALJ did not make a proper credibility finding concerning her subjective complaints about her symptomatology and resulting functional limitations. She posits

that, despite the ALJ's obligation to comply with SSR 96-7p, she discussed Morton's credibility in a conclusory manner. Morton challenges the ALJ's reasons for finding that her statements regarding her symptoms and their effects were not credible, arguing (1) despite the ALJ's finding to the contrary, the record indicates that she was in fact hospitalized at a psychiatric hospital; (2) the record contradicts the ALJ's finding that there were gaps in Morton's treatment history that discredit her testimony; and (3) the ALJ should not have relied on Dr. Muirhead's report following his consultative examination indicating that Morton's medications successfully managed her symptoms because other evidence indicated that Morton's treatment regimen was not successful. Morton maintains that she continually sought treatment throughout the adjudicative period, and that the record shows that her various treatment regimens did not effectively control her symptoms.

The Commissioner responds that the ALJ's credibility determination is based in the evidence and adequately explained. The Commissioner argues that the ALJ correctly relied on a variety of factors, including medical records, inconsistent medical treatment and medications, and Morton's activities of daily living to determine that her complaints were not credible.

The court holds that the ALJ's credibility determination is sufficiently explained.

The ALJ found that Morton's "statements concerning the intensity, persistence, and limiting effects of [the symptoms that resulted from her medically determinable impairments] are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 16. SSR 96-7p provides, in pertinent part:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *2 (July 2, 1996).

The Fifth Circuit has in several decisions held that credibility findings similar to the one the ALJ made here did not violate SSR 96-7p. *See, e.g., Salgado v. Astrue*, 271 Fed. Appx. 456, 462 (5th Cir. 2008) (per curiam) (holding that ALJ's decision complied with SSR 96-7p where it made clear that ALJ took into account claimant's testimony regarding her symptoms and pain in considering weight of her subjective claims; and the ALJ discussed the kind of evidence required for credibility decisions under SSR 96-7p, evaluating claimant's daily activities, the location of her pain in her body, the types of medication she took and the periods of time when she took it, and other alleviating measures); *Onishea*

*v. Barnhart*, 116 Fed. Appx. 1, at *1 (5th Cir. 2004) (per curiam) (holding that ALJ complied with SSR 96-7p in finding that claimant's subjective complaints were generally credible, but not to the extent she alleged she was completely unable to perform any work activity); *Herron v. Halter*, 250 F.3d 744, at *1 (5th Cir. 2001) (per curiam) (rejecting contention that ALJ failed to comply with SSR 96-7p in assessing credibility of witnesses at hearing and failed to articulate all the reasons for credibility determination relative to all of claimant's complaints, where ALJ in her decision summarized the testimony of the witnesses and explicitly stated that she had considered all the evidence and testimony in reaching a decision, ALJ chose not to credit testimony indicating that claimant's concentration and hyperactivity problems were disabling, stating that such testimony could not "be found as fact," and ALJ noted that such testimony was not supported by the medical evidence of record, which the ALJ detailed prior to the credibility determination and summarized afterwards. In *Landfried v. Apfel*, 218 F.3d 743 (5th Cir. 2000) (per curiam), the ALJ, in considering the extent to which the claimant's subjective symptoms of chronic back pain, stress, anxiety, and memory problems reduced her RFC, reached a conclusion that the claimant challenged as insufficient under SSR 96-7p and that is similar to the one at issue in the present case:

> While some of the symptoms reported reasonably
> derive from medically determinable impairments
> evidenced in the record, the intensity,
> duration, and functional limitations alleged
> by the claimant are not fully credible and are
> not supported in the clinical records,
> evidence of daily functioning, and evidence of
> symptom management without prescribed
> medications.

*Id.* at *4. The Fifth Circuit rejected this challenge and held that the ALJ complied with SSR 96-7p. The court pointed out that, in reaching this conclusion, the ALJ summarized the clinical findings of four doctors concerning the claimant's back condition and the clinical findings of another physician concerning the claimant's depression. *Id.* The ALJ expressly discredited the opinion of one physician that the claimant's condition appeared to satisfy the criteria of § 1.05C of the Listing of Impairments, and the ALJ also considered the claimant's testimony about the extent of her pain and limitations on her daily activities caused by pain and depression, and made express findings about the credibility of the claimant's subjective complaints, and the findings were based on a review of the medical records and the claimant's own testimony. *Id.*

In the instant case, the conclusion that Morton challenges was reached only after the ALJ discussed the evidence in the record and explained how she evaluated the evidence in making her RFC assessment. *See* Tr. 14-16. Somewhat akin to *Herron*, the ALJ in effect explained after reaching this conclusion her reasons for

doing so.  *See Herron*, 250 F.3d at *1 (noting that ALJ summarized afterwards evidence that had been detailed before reaching conclusion); Tr. 16-18.

C

The court also holds that the ALJ's credibility determination is supported by substantial evidence.  Substantial evidence simply needs to be more than a mere scintilla.  Not only is it less than a preponderance, the evidence can preponderate in the claimant's favor and the ALJ's decision still be supported by substantial evidence.

The ALJ found that Morton's testimony regarding the severity of her symptoms was not credible because medical records from her visit with Dr. Muirhead indicated that she was capable of taking public transportation, she visited support groups, and she independently managed the tasks of daily living, including personal dress, hygiene, and meal preparation.  Morton also stated during her July 11, 2008 visit to Dr. Muirhead and her December 4, 2007 and May 21, 2009 visits to Metrocare that her symptoms improved significantly when she took her medication.  The ALJ also considered that Morton made inconsistent statements regarding her history of hospitalization.  Morton reported to Dr. Muirhead on July 11, 2008 that she had only been hospitalized once, in the 1990s; but she told Dr. Tan only one month earlier that she had recently been hospitalized for paranoia and fear of leaving the

house. The ALJ also found that Morton's testimony about the severity of her symptoms was not credible because significant periods of time elapsed between Morton's medical treatments: she did not seek treatment between August 2008 and March 2009. The ALJ's decision is supported by substantial evidence.

The court therefore declines to grant relief on this basis because Morton has not shown that the ALJ committed reversible error.

\* \* \*

Accordingly, for the reasons explained, the Commissioner's decision is

AFFIRMED.

June 20, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE